WILLIAM L. PRINCE *vs.* WILLIAM B. SKILLIN.

Cumberland.    Opinion August 10, 1880.

*Stat. 1880, c. 198. Judicial notice. Legislature of 1880 legal. Canvassing board— decision of, only prima facie evidence of right to office. " Scattering" votes.*

All offices, except when legislative authority is limited or restricted by constitutional provisions, are subject to the will of the legislature. There is, with this exception, no vested right in an office, or its salary.

Stat. 1880, c. 198, gives a speedy and effectual remedy to a party duly elected to an office, in case of an erroneous or fraudulent count, by the canvassing board. It accomplishes by one process the objects contemplated by two— *quo warranto*, and *mandamus*. It was enacted by a lawful legislature and approved by the governor.

The court is bound to take judicial notice of the doings of the executive and legislative departments of the government, and of historical facts of public notoriety passing in our midst.

The decision of the governor and council, as a canvassing board, does not constitute an estoppel upon other branches of the government. The board, so far as relates to county officers, are limited and restricted to what appears by the return, and such inquiries as are authorized by R. S., c. 78, § 5, and stat. 1877, c. 212. Their judgment is not made conclusive, it is only *prima facie.*

The real title to an elective office depends upon the votes cast. The underlying principle is, that the election, and not the return, is the foundation of the right to such an office.

Where by the decision of the canvassing board, six thousand three hundred and eleven voters were disfranchised, because two ballots were returned as "scattering," which, if added to the number received by any of the persons voted for would not change the result, and which from an amended return were shown to have been thrown for William B. Skillings; *Held,* that such decision was at war with the law of the land, the rights of parties, the will of the people and the principles upon which alone a republican government can rest.

The opinion states the case.

*Ardon W. Coombs,* for the petitioner, cited : High on Ex. Leg. Rem. § § 624, 625, 638, 639 ; *People* v. *Holden,* 28 Cal. 123 ; *People* v. *Cook,* 8 N. Y. 67 ; *People* v. *Vail,* 20 Wend. 12 ; *People* v. *Jones,* 20 Cal. 50 ; *Commonwealth* v. *Co. Com.* 5 Rawle, 75 ; Opinion of the Justices, 54 Maine, 602 ; *Morgan* v. *Quackenbush,* 22 Barb. 77 ; *People* v. *Van Slyck,* 4 Cow. 297 ; *Ex parte Heath,* 3 Hill, 47 ; *Thompson* v. *Ewing,* 1 Brewst. 77 ; *State* v. *Governor,* 1 Dutch. 348 ; *Brower* v.

*O'Brien*, 2 Ind. 423 ; *State* v. *Jones*, 19 Ind. 356 ; *People* v. *Hilliard*, 29 Ill. 422 ; *State* v. *Cavers*, 22 Iowa, 343 ; Opinion of the Justices, 25 Maine, 568 ; *Id.* 38 Maine, 597 ; *Id.* 54 Maine, 602 ; *Id.* 64 Maine, 591, 596 ; *Id.* 68 Maine, 587 ; *Bacon* v. *Co. Comr's*, 26 Maine, 494 ; *Dennett, Pet'r*, 32 Maine, 508 ; *Jones* v. *State*, 1 Kansas, 279 ; *Strong, Pet'r*, 20 Pick. 484 ; *People* v. *Cook*, 14 Barb. 293 ; *People* v. *Schemerhorn*, 19 Barb. 540 ; *Dickey* v. *Hurlburt*, 5 Cal. 343 ; McCrary's Law of Elections, § 166 ; *Skerrett's Case*, 2 Parsons, 509 ; *Commonwealth* v. *Meeser*, 44 Pa. St. 343 ; *Juker* v. *Commonwealth*, 20 Pa. St. 493 ; *Piatt* v. *People*, 29 Ill. 72 ; *Taylor* v. *Taylor*, 10 Minn. 107 ; *People* v. *Bates*, 11 Mich. 362 ; R. S., c. 3, § 8 ; *Low* v. *Dunham*, 61 Maine, 566 ; *Milford* v. *Orono*, 50 Maine, 529 ; *Blake* v. *R. R.* 39 N. H. 437 ; *Rogers* v. *Bowen*, 42 N. H. 102 ; 1 Greenl. Ev. c. 2, § 6.

*Bion Bradbury, L. D. M. Sweat* and *Clifford & Clifford*, for the respondent.

The constitution is that instrument agreed on by the people as the absolute rule of action and decision for all departments and officers of the government, in respect to all the points covered by it. By it, the legislature holds all the powers of the people, except those expressly withheld ; but the executive and judiciary, none except those expressly given. Cooley Con. Lim. 139, n. 1.

We deny the doctrine that the provisions of the constitution are directory and not mandatory. If mandatory then the Portland return was fatally defective as it did not contain the names of all persons voted for as county commissioners.

The counsel contended in a very elaborate and able argument that the act, by the authority of which this proceeding was brought, has not the force of law because it was not enacted by a lawful legislature, nor approved by a lawful governor, and cited : Hon. Geo. F. Hoar, U. S. senator from Massachusetts, in the Kellogg-Spofford debate in U. S. senate ; the decision of the *quo warranto* to the House in 1604, in the dispute between King James and the British House of Commons ; Fischel's British Constitution, 442 ; Haversham Cox on Institution of the English Government ; *Goodwin* v. *Fortescue*, 2 State Trials ; *Cæsar*

*Griffin's Case*, Chase's Decisions, 364 ; *Fitchburg Co.* 1 Allen, 557 ; *Coolidge* v. *Brigham, Id.* 333 ; *Denny* v. *Mattoon*, 2 Allen, 384 ; *Hooper* v. *Goodwin*, 48 Maine, 79 ; Opinion, KENT, J., 58 Maine, 572 ; Opinion of Justices, 126 Mass. 556 ; Opinion of Justices, 120 Mass. 602 ; 16 Maine, 483 ; *State* v. *Brown*, 5 R. I. 1 ; High, Ex. Rem. § § 620, 625, 627, 638, 639 ; *State* v. *Hunton*, 28 Vt. 594 ; *People* v. *Cook*, 8 N. Y. 67 ; *People* v. *Pease*, 30 Barb. 588 ; Cooley's Con. Lim. pp. 786, 787, 623 ; 35 Maine, 590 ; 38 Maine, 599. Opinion of Majority of Electoral Commission on the Louisiana Electoral Vote ; *Hadley* v. *Mayor of Albany*, 33 N. Y. 603 ; *Clarke* v. *Buchanan*, 2 Minn. 346.

A certificate or summons coming from the canvassing board, held by a member, to attend and take a seat, entitles him to the seat until he is ousted on contest. *Dennett, Petitioner*, 32 Maine, 508 ; Opinion, 117 Mass. 600 ; *People* v. *Miller*, 16 Mich. 56 ; *Ross* v. *Baxster*, 35 Penn. St. 263 ; *Hulseman et al.* v. *Rems et al.* 41 Penn. St. 401 ; *Kerr* v. *Trego*, 47 Penn. St. 292 ; *People* v. *Cook*, 4 Selden, 68 ; *Headly* v. *Mayor*, 33 New York, 606 ; *State* v. *Clerk Passaic*, 1 Dutcher's Reports, (N. J.) 354 ; *Briggs* v. *Churchill*, 15 Minn. 455 ; *State* v. *Wharton*, 25 La. 3 ; *Collins* v. *Knobloch*, 25 La. 263 ; *Bonner* v. *Lynch*, 25 La. 267 ; *Overseers* v. *Yarrington*, 20 Vt. 473 ; *Morgan* v. *Quackenbush*, 22 Barb. 72 ; *Coolidge* v. *Brigham*, 1 Allen, 335 ; *Patterson* v. *Miller*, 2 Met. (Ken.) 497.

His title is so far good that a court, in absence of proof to the contrary, is bound to presume him to be a *de jure* incumbent. *Poell* v. *McDonald*, 7 Kans. 426 ; *Willis* v. *Sproule*, 13 Kans. 257 ; *Eiggs* v. *State*, 49 Ala. 32.

It is settled in numberless cases, that in *quo warranto*, the court will go behind a certificate and ascertain the fact of election. *People* v. *Van Slyck*, 4 Cow. 297 ; *People* v. *Ferguson*, 8 Cow. 102 ; *Jeter* v. *State*, 1 McCord, 233 ; *People* v. *Vail*, 20 Wend. 12 ; *Bashford* v. *Barstow*, 4 Wis. 567 ; *Hill* v. *State*, 1 Ala. (N. S.) 559.

The entire body of authorities is an admission that the possession of a certificate is a legal title which requires judicial

investigation to set aside.   It never was contradicted till now. This is too great an oversight to be allowed to stand.

The summons is a title to the seat, coming from the authorized body who issue it in the first instance.   A title, it is true, capable of being overthrown, but the legal title *till* overthrown, and in the prescribed way.   The way is, the question being judicial in its nature, that the appointed judges must try it, the house.

It has never been tried, for there can be no trial, in a legal sense, where there is no hearing.   All that has taken place has occurred by an opinion.   And it can never be said that there were never any members legally placed in the disputed seats except those certificated by summons.   They have never been legally ousted. *Com.* v. *Jones*, 10 Bush. 726.   When the inquiry to be made involves questions of law as well as fact, when it affects a legal right, and the decision may result in terminating or destroying that right, the power to be exercised and the duties to be discharged are essentially judicial.   A summons is issued by the constitutional authority to take a seat.   By means of it, the holder acquires a legal title till disputed.   The disposal of this right is, in its nature, a judicial proceeding, by trial of fact and law.   The house tries it.   The court never, anywhere, but if it could, not in an opinion; yet under this advisory process, the court did adjudge seats to persons and against others by means of questions, numbers three and four of second series.

Any process to try right of office is essentially similar to *quo warranto*.   *Jury trial*, 22 How. 182.   Incumbent properly elected, but not being sworn into office may be ousted.   High's Extraordinary Legal Remedies, § 760.   *In re Mayor of Penryn*, Stra. 582.   Office cannot be held at the same time by a *de jure* and a *de facto* incumbent.   *Boardman et al.* v. *Halliday*, 10 Paige, Ch. 223 ; *Morgan* v. *Quackenbush*, 22 Barb. 79 ; *King* v. *Mayor of Colchester*, 2 Term R. 260 ; *Gardner* v. *Collector*, 6 Wallace, 499.   Act of passing and of approving a law in an official capacity.

APPLETON, C. J.   The plaintiff, claiming to have been duly elected county commissioner for the county of Cumberland, brings this bill against the defendant whom he alleges to have

been wrongfully declared elected to that office, when, in fact, he was not so elected.

This proceeding is under and by virtue of c. 198 of the acts of 1880, entitled "an act providing for the trials of causes involving the rights of parties to hold public offices."

The processes by which rights are to be established and wrongs redressed are within and subject to legislative control. Old forms and modes of procedure may be abolished and new ones established.

All offices, except when legislative authority is limited or restricted by constitutional provisions, are subject to the will of the legislature. There is, with the above exception, no vested right in an office or its salary. The office may be abolished. The mode of appointment may be changed. The length of time of official existence may be shortened. The compensation for official services may be diminished. *Farwell* v. *Rockland*, 62 Maine, 298; *Butler* v. *Pennsylvania*, 10 How. (U. S.) 403; *Parker* v. *Pittsburgh*, 4 Barr. 51; *Connor* v. *New York*, 1 Selden, 291; *Taft* v. *Adams*, 3 Gray, 126.

The act, c. 198 of the acts of 1880, was passed to enable parties duly elected to office but not declared to be so elected, to contest their rights before a judicial tribunal. The defendant was declared elected to the office in controversy by the canvassing board of the State. The allegations in the bill are, that errors occurred in the doings and proceedings of the board, and that upon a fair and honest count the plaintiff was duly elected, but that the defendant has usurped the office to which he was so elected. "When one is charged with usurping an office in the commonwealth, there must be," remarks the court in *Com.* v. *Fowler*, 10 Mass. 290, "authority in this court to inquire into the truth of the charge." This act gives a remedy in case of an erroneous or fraudulent count by the canvassing board. It will hardly be contended that if by errors of computation, throwing out legal returns or counting illegal ones, a candidate not duly elected is wrongfully declared to be elected, there should not be some remedy provided for the party actually elected, by which the wrong done may be corrected. If the error is not subject

to correction, then the canvassing board, in the exercise of irresponsible power have full and absolute control of the government and may effectually stifle the voice of the people, according to their sovereign will and pleasure.

Before the passage of the act under consideration, the only existing process by which right of one unlawfully holding an office could be inquired into, was by *quo warranto*. This writ issues in behalf of the State against one who claims or usurps an office to which he is not entitled, to inquire by what authority he supports his claim or sustains his right. The proceeding is instituted by the attorney general on his own motion or at the relation of any person, but on his official responsibility. It lies against an officer appointed by the governor and council or elected by the people. It removes the illegal incumbent of an office, but it does not put the legal officer in his place. It is insufficient to redress the wrongs of one whose rights have been violated.

To restore a person to an office from which he has been unjustly removed or unlawfully excluded, the proper process is by *mandamus*. By this, the rights of one lawfully entitled to an office, which has been illegally withheld, may be enforced. *Strong, Petitioner*, 20 Pick. 497.

By *quo warranto* the intruder is ejected. By *mandamus* the legal officer is put in his place. The act c. 198, accomplishes by one and the same process the objects contemplated by both these results. It ousts the unlawful incumbent. It gives the rightful claimant the office to which he is entitled. It affords a speedy and effectual remedy instead of the tedious and dilatory proceeding of the common law.

It is insisted that this bill for various reasons cannot be sustained. The grounds of objection to its maintenance we propose to examine.

1. The respondent contended "that the legislature which passed the act authorizing this and the governor approving it, could not rightfully do so, because there was a prior *de facto* legislature with a *de facto* governor, as set forth in the respondent's answer, not ousted by any competent tribunal."

The act in question was passed by an organized and acting legislature, approved by the governor and comes before us with

all the *indicia* of validity by which any act of any past legislature is or can be evidenced.

When there are two conflicting legislatures, each claiming of right to exercise legislative functions, it is for the court to determine by which body legislative authority can be lawfully exercised. In answer to inquiries made by certain gentlemen claiming official position under date of January 23, 1880, (70 Maine, 582,) this court used the following language: "When different bodies of men, each claiming to be and to exercise the functions of the legislative department of the State, appear, each asserting their titles to be regarded as the law-givers for the people, it is the obvious duty of the judicial department, who must inevitably, at no distant day, be called to pass upon the validity of the laws that may be enacted by the respective claimants to legislative authority, to inquire and ascertain for themselves, with or without questions presented by the claimants, which of those bodies lawfully represents the people from whom they derive their power. There can be but one lawful legislature. The court must know, for itself, whose enactments it will recognize as laws of binding force, whose levies of taxes it will enforce when brought judicially before it, whose choice of a prosecuting officer before the court it will respect. In a thousand ways, it becomes essential that the court should forthwith ascertain and take judicial cognizance of the question: Which is the true legislature?"

We are bound to take judicial notice of the doings of the executive and legislative departments of the government, when called upon by proper authorities to pass upon their validity. We are bound to take judicial notice of historical facts, matters of public notoriety and interest passing in our midst. These views are in full accord with the decisions of our highest tribunals. In *Swinnerton* v. *Columbian Ins. Co.* 37 N. Y. 188, it was objected that there was no evidence of a civil war. "This objection," observes HUNT, J., "I do not consider a sound one. The rule I take to be this: That matters of public history, affecting the whole people, are judicially taken notice of by the courts; that no evidence need be produced to establish them; that the

court in ascertaining them, resort to such documents of reference as may be at hand and as may be worthy of confidence. Thus in the prize cases already cited, (2 Black, 667,) the court use this language : ' The actual existence of civil war is a fact in our domestic history which the court is bound to notice and to know.' There the general facts connected with the history of the case, seem to have been assumed as within the judicial cognizance of the court. Greenleaf in his work on evidence, vol. 1, § 6, says, courts ' will also judicially recognize the political constitution or frame of their own government; its essential political agents or public officers, sharing in its regular administration; and its essential and regular political operations, powers, and actions. Thus, notice is taken, by all tribunals of the accession of the chief executive of the nation or state, under what authority they act; his powers and privileges, &c. . . the sittings of the legislature and its established and usual course of proceedings. . . In fine, courts will take notice of whatever ought to be generally known within the limits of their jurisdiction. In all these and the like cases, when the memory of the judge is at fault, he resorts to such documents of reference as may be at hand; and he may deem worthy of confidence.' It is the duty of the court to know county officers. *Farley* v. *McConnel*, 4 Lans. 428; much more the governor and legislature. *State* v. *Minnick*, 15 Iowa, 123."

After a careful consideration of the grave and important questions proposed by the governor, the rightful legislature and a body of gentlemen claiming, but without right, to be a legislature, this court in its several answers of January last, announced the result to which it had arrived; that the legislature by which the act under discussion was passed, was the legislature to whose acts the obedience of the people is due. In the correctness of the conclusions which were then reached, and in the principles and reasons upon which those conclusions are based, we rest in perfect confidence.

To the same general effect are the cases of *Wood* v. *Wilder*, 43 N. Y. 164; *Cuyler* v. *Ferrill*, 1 Abb. U. S. 169; *Rice* v. *Shook*, 27 Ark. 137; *Killebrew* v. *Murphy*, 3 Heisk. (Tenn.)

546; *Division of Howard Co.* 15 Kansas, 194; *Turner* v. *Patton*, 49 Ala. 406; *Ashley* v. *Martin*, 50 Ala. 537; *Smith* v. *Speed*, 50 Ala. 276; *Andrews* v. *Knox Co.* 70 Ill. 65; *Douthitt* v. *Sinson*, 63 Mo. 268; *Foscue* v. *Lyon*, 55 Ala. 440.

The body of men which the counsel for the defendant terms by courtesy a *de facto* legislature, though its house was composed of men who were and who were not elected, both classes not constituting a quorum, and of a senate a part of whom, less than a quorum, were duly elected, and a part were not elected, could not legally act as legislative bodies. While this condition of affairs remained there was no legal legislature. The greater portion of the members of the bodies thus illegally constituted subsequently took their seats respectively in the rightful house and senate—a house and senate composed of members unquestionably elected. They participated in its legislative action until its final adjournment. They received and acknowledged the receipt of the compensation to which by law they were entitled as members of the legislature. There was no other body claiming to exercise legislative functions. What the counsel calls the *de facto* legislature became merged into the rightful legislature, by which a governor was chosen in the accustomed manner, who entered upon and is now discharging, without interference or obstruction, the duties of that office. All this is well known as matter of current history, as well as by the legislative journals.

The offered proof was properly excluded. It is immaterial whether or not at some past time there was a *de facto* legislature or a *de facto* governor—inasmuch as neither was such *de jure*—and as the rightful legislature was not interfered with in the exercise of its legitimate powers, and the rightful governor is not disturbed in the discharge of his official duties. The acting legislature and the acting governor are both *de facto* and *de jure* the legislature and governor of the State and to be recognized as such.

2. It is claimed that the decision of the governor and council acted as a final canvassing board, and that their final action constitutes an estoppel upon all other branches of the govern-

ment, except the houses of the legislature in regard to the membership of those bodies.

This is not so. The object of all investigations is to arrive at true results. The canvassing board so far as relates to county commissioners are limited and restricted to what appears by the returns, except that by R. S., c. 78, § 5, and c. 212 of the acts of 1877, "they may receive testimony on oath to prove that the return from any town does not agree with the record of the votes of such town or the number of votes or the names of the persons voted for and to prove which of them is correct; and the return when found to be erroneous may be corrected by the record," and the governor and council are required to "count and declare for any person all votes intentionally cast for such person, although his name upon the ballot is misspelled or written with only the initial or initials of his christian name or names; and they may hear testimony upon oath in relation to such votes in order to get at the intention of the electors and decide accordingly." But they are no where authorized to extend their inquiries beyond these limits—to inquire into the validity of meetings—whether or not votes were cast by aliens or minors or any of the various questions involving the validity of the result. Their judgment is not made conclusive. In case of senators and representatives, the final determination rests with the senate and house. So in reference to county officers, the courts in the last resort, must determine the rights of the parties. If it were not so, if the canvassing board erred in their computations,—if they should willfully or ignorantly disregard the law—rejecting legal and valid returns and receiving and acting upon illegal and invalid returns, there would be no remedy for the party duly elected. "If," say the court, in their opinion, 25 Maine, 570, "the legislature had deemed it expedient, and had actually intended to constitute the governor and council judges generally of the election of county officers, it would have been easy for them to have been explicit to that effect; not having done so, it must be presumed that nothing of the kind was intended." It is abundantly obvious this must be so, since the right of full investigation is withheld from them.

County commissioners hold their office by popular election. If one not legally elected, is erroneously declared to be elected, the will of the people is disregarded. An usurper holds an office to which he has no right. "The usurpation of an office is not an invasion of executive prerogative," observes NOTT, J., in *State* v. *Deliesseline*, 1 McCord 52, "but of the rights of the people; and the only method by which these rights can be protected, is through the instrumentality of the courts of justice."

In accordance with these views it has been uniformly held by this and all other courts where the question has arisen, that the decision of the canvassing board is only *prima facie* evidence, that the real title to an office depends upon the votes cast, and that the tribunal before which the question arises, will investigate the facts of the election, the votes cast, and the legality of the action of the canvassing board. *People* v. *Cook*, 8 N. Y. 67; *People* v. *Vail*, 20 Wend. 12; *State* v. *Governor*, 1 Dutch. 348; *People* v. *Judson*, 55 N. Y. 525. The series of opinions of this court from that of 25 Maine, 568, to the present time, concur in the conclusion that the action of the governor and council, so far as relates to all matters pertaining to the case under consideration, in canvassing the returns, is purely ministerial, and is to be confined strictly within the bounds of the constitution and the statutes enacted in furtherance of the constitution.

The underlying principle is that the election and not the return is the foundation of the right to an elective office, and hence it has been held competent to go behind the ballot box, and purge the returns by proof that votes were received and counted, which were cast by persons not qualified to vote. *People* v. *Pease*, 27 N. Y. 45, "Freedom of inquiry in investigating the title to office," observes ANDREWS, J., in *People* v. *Judson*, 55 N. Y. 531, "tends to secure fairness in the conduct of elections, faithfulness and integrity on the part of returning officers, and it weakens the motive to fraud or violence by diminishing the chances that they may prove successful in effecting the objects for which they are usually employed."

3. The ground is taken "that the vote of the city of Portland was rightly rejected as illegal by the governor and council, the

return thereof not being in accordance with the statute, in that it did not contain the names of all the candidates voted for with the number of votes set against them."

It is conceded that if the vote of Portland is to be counted, the plaintiff was duly elected. The whole number of votes cast was six thousand three hundred and thirteen, of which two were returned as scattering.

None of the votes of the city of Portland were counted. They were all thrown out. Why? Because the ward meetings were not regularly notified? Because the ward meetings were not legally organized? Because those not qualified electors were permitted to vote? Because there was fraud or intimidation at the meeting? Because the votes of qualified voters were rejected? Because the votes were not received, sorted, counted and declared in open ward meeting? Because a fair record of the result was not seasonably made? Because the returns duly sealed and attested were not transmitted to the secretary of State within the time required? Because of any informality, great or small? No. None of these causes were pretended,—much less proved, but because of the number of votes cast, two were returned as scattering, that is, because two wrote "scattering" on their ballots or because two voted for candidates not voted for by anybody else, and the clerk returned them as scattering instead of giving the names of persons for whom the votes were cast. Thus, and for such cause, 6311 voters, being over a third of the voters of the county of Cumberland, were disfranchised—for they were equally disfranchised whether they voted for one candidate or the other. This disfranchisement was for no neglect or omission of theirs.

This is a government of the people. Their will as expressed by the ballot is what is to be ascertained and declared. To disfranchise six thousand three hundred and eleven voters because two ballots were returned as scattering, is a novel mode of giving expression to the popular will. If the citizens voting can have their votes nullified for such cause, any voter by writing "scattering" on his ballot or any clerk by returning a vote or votes under this head, may annihilate a majority however large. No man can be sure his vote will be effective.

The word "scattering" written on a ballot indicates the name of an individual or it does not. If a name, then it should be counted. If it is not the name of an individual, then perhaps it may be regarded as a blank vote. It is, at any rate, a ballot. It is provided by R. S., c. 4, § 32, as amended by c. 212 of the acts of 1877, that "in order to determine the result of any election by ballot, the number of persons who voted at such election, shall first be ascertained by counting the *whole* number of ballots given in, which shall be distinctly stated and recorded." The *whole* number of ballots counted, including the votes returned "scattering," the petitioner was most assuredly elected; for in the case under consideration, these votes however added or subtracted, would not have changed the result.

The office of county commissioner is one created by the statute, not by the constitution. As a canvassing board, the governor and council act in relation to this office under R. S., c. 78, § 5, as amended by c. 212 of the acts of 1877, and by that act the *whole* number of ballots given should have been counted. Had they been so counted the plaintiff's election was assured.

The rule obtains in every state, that an election is not to be set aside and declared void, merely because certain illegal votes were received, which do not change the result of the election. *The People* v. *Tuthill et als.* 31 N. Y. 550; *Judkins* v. *Hill*, 50 N. H. 140; *School District* v. *Gibbs*, 2 Cush. 30. In *ex parte Murphy*, 7 Cow. 153, two ballots were put in the box on the names of two persons who were formerly voters, but who had died some weeks before the election. "To warrant the setting aside the election," the court observes, "it must appear affirmatively, that the successful ticket received a number of improper votes, which, if rejected, would have brought it down to a minority. The mere circumstance that improper votes were received, will not vitiate an election." The extra vote should never be rejected, when it is possible to ascertain the fraudulent vote. *Mann* v. *Cassidy*, 1 Brewster (Penn.), 32. In an action to determine the right to an office, the court may look beyond the returns and even the ballot boxes, if necessary, to ascertain the truth. *The People* v. *Cook*, 14 Barb. 259.

Now there is no allegation whatever that illegal or fraudulent votes were cast. Whether the votes returned as scattering were cast by persons not authorized to vote, or fraudulently cast, or for a candidate ineligible, or erroneously returned as scattering by mistake or fraud, is immaterial, inasmuch as they did not change the result, the petitioner having a plurality of over six hundred votes should have been declared elected.

It is proper to add that the amended return shows the names for whom the votes counted as scattering were given — to wit : William B. Skillings. So that in truth, there remains no conceivable ground upon which the respondent can claim to hold over.

The decision of the canvassing board was at war with the law of the land, the rights of parties, the will of the people and the principles upon which alone a republican government can rest.

*Judgment for the petitioners.*

WALTON, BARROWS, DANFORTH, PETERS, LIBBEY and SYMONDS, JJ., concurred.