## IN RE SPEAKERSHIP OF THE HOUSE OF REPRESENTATIVES.

1. THE SPEAKER NOT REMOVABLE BY IMPEACHMENT.— The speaker of the house of representatives is not a state officer, and is not liable to removal by impeachment.

2. HOW A SPEAKER MAY BE REMOVED.— The house of representatives has the power, by a vote of the majority of the whole number of members elected, to remove its speaker from office and to elect another in his stead.

THE following proceedings were had and opinion announced upon receipt of, and in response to, the communication from the governor appearing below:

Section 3 of article 6 of the constitution of Colorado contains the following provision: "The supreme court shall give its opinion upon important questions, upon solemn occasions, when required by the governor, the senate, or the house of representatives; and all such opinions shall be published in connection with the reported decisions of said court."

In pursuance of said provision the following communication and interrogations were duly submitted to the court: "To the Honorable the Supreme Court of the State of Colorado — Sirs: The eighth general assembly of the state of Colorado met at 12 o'clock noon on the first Wednesday, the 7th day of January, 1891.

"The house of representatives on said day elected one of its members, Hon. James W. Hanna, as speaker, who was at once sworn in as such speaker, and continued thereafter to exercise the duties thereof, and was duly recognized by the members of the general assembly and by the executive of the state as such speaker, and he is now such speaker, unless deposed by the action of members of said house while in session, as hereinafter stated.

"On the 14th day of January, 1891, certain of the members of said house, constituting a majority thereof, while said house was in session as aforesaid, and said James W. Hanna was occupying the speaker's chair, and engaged in

the discharge of his duties as such speaker, sought to depose said Hanna as speaker in manner following, to wit:

" A motion was duly made by a member of said house, and duly seconded by a member thereof, that the office of speaker of said house be declared vacant, which motion said Hanna refused to entertain; whereupon a member of said house, not the speaker thereof, propounded said motion, and called upon the other members to vote thereon; and thereupon a majority of the whole number of members elected to said house announced themselves in favor of said motion, and the member so propounding said motion declared the same adopted, and the office of speaker vacant.

" Thereupon, and after the office had been declared vacant in manner aforesaid, said Hanna, upon a *viva voce* vote, declared the house adjourned, the majority claiming they had voted against said motion.

" Immediately thereafter a majority of said members, proceeding in manner as before, assumed to elect Hon. Jesse White, a member thereof, as speaker of said house, who thereupon took oath to perform the duties of speaker.

" Both said Hanna and said White now claim to be the speaker of said house, and are both assuming to discharge the duties thereof.

" As governor of this state I am and will be required by the constitution and laws of said state to communicate with the speaker of said house upon official and executive business; and I will be required to approve or disapprove acts passed by the said assembly which bear the signature and authentication of the speaker.

" I certify, therefore, that the questions submitted are important, and arise upon a solemn occasion, wherein I, as the executive of Colorado, require the opinion of the supreme court, in order to properly discharge my duties. I respectfully request, therefore, the opinion of the honorable supreme court in answer to the following questions:

"*First.* Under the constitution and laws of this state, can a speaker of the house of representatives, duly elected,

qualified, and acting as such, be removed from office in the manner aforesaid?

"*Second.* Who is now the speaker of said house?

"I am, most respectfully, your obedient servant, John L. Routt, Governor."

Upon reception of said communication, it was ordered that an oral argument be heard before the court upon the following questions:

"(1) Has the court any authority under the constitution and laws to pass upon the matters thus presented for its opinion?

"(2) What is the state of the law, parliamentary or otherwise, pertaining to the subjects covered by the executive inquiry?"

It was further ordered that the attorney-general, and other members of the bar interested in the subjects to be considered, be requested to participate, *amici curiæ*, in said argument.

Mr. Joseph H. Maupin, attorney-general, appeared at the hearing, and introduced Mr. James B. Belford, Mr. Charles S. Thomas, Mr. Hugh Butler, Mr. Joel T. Vaile and Mr. Harvey Riddell, who addressed the court upon the questions presented.

Mr. Justice Elliott delivered the opinion of the court.

The gravity of the subject presented for the consideration of the court by the communication and interrogatories submitted by his excellency, the governor, has caused us to depart from the general custom of returning categorical answers to such inquiries. Inasmuch as the subject incidentally involves nothing less than the legality of the organization of one branch of the general assembly, and as we have invited and heard able and exhaustive arguments in behalf of the respective claimants to the speakership, we feel that an opinion should be given setting forth the grounds upon which our conclusions are based.

It was urged in argument with great force that this court ought not to express any opinion upon the questions presented by the executive, for the reason that it would be an interference with matters pertaining exclusively to the legislative department of the government, and therefore in conflict with article 3 of the constitution, which divides the governmental powers of the state "into three distinct departments — the legislative, executive and judicial,"— and forbids those of one department from exercising "any power properly belonging to either of the others, except as in this constitution expressly directed or permitted."

It was further urged that the court could not properly assume to give its opinion upon a question presented by the governor unless the court would have jurisdiction to determine and enforce its views in a direct proceeding involving such question; and it was strongly insisted that the court could not, in any direct proceeding, determine a controversy between contesting claimants for the office of speaker, though it was conceded that, indirectly or incidentally, the court might be required to pass upon such question. *Prince v. Skillin*, 71 Me. 361.

It must be admitted that the promulgation of a judicial opinion in response to an *ex parte* inquiry from the executive department of the government, concerning the affairs of the legislative department, is anomalous and peculiar, and, apparently at least, inconsistent with the prevalent American system of separating the governmental powers into distinct departments. But it must be borne in mind that the same instrument which divides the powers of the government into distinct departments has been so amended by the voice of the people as to require the supreme court to "give its opinion upon important questions, upon solemn occasions, when required by the governor, the senate or the house of representatives." Art. 6, § 3. We have heretofore endeavored to restrict somewhat the class of subjects upon which the opinion of this court might be required under such amendment. *In re Irrigation*, 9 Colo. 620; *In*

re *Senate Bill No. 65*, 12 Colo. 466; *In re Appropriations*, 13 Colo. 316.

Certainly, no constitutional question, or question *publici juris*, can be of more importance, nor can any occasion be more solemn, than that arising from the present contention respecting the organization of the house of representatives. The subject involves, not merely the constitutionality of a particular bill or enactment, but it may involve the validity of all further proceedings and enactments of the present general assembly. Therefore, while deploring the occasion which has led the executive to request our opinion in the present exigency, we do not feel at liberty to decline answering; we feel constrained by the imperative command of the constitution to give our opinion upon the subject thus pressed upon our consideration. We shall examine into and declare what we conceive to be the strict legal powers of the house of representatives relative to the matter referred to us, irrespective of the policy or expediency of exercising those powers.

From the foundation of representative government in this country, the general rule, as announced by standard American authors on parliamentary law, has been that the legislative body of a state, having the power to choose its own speaker from its own members, has also the inherent power to remove such officer at its will or pleasure, unless inhibited from so doing by some constitutional or other controlling provision of law. Such is the doctrine announced in the Manual of Parliamentary Practice prepared and published by President Jefferson during the early days of the republic, and republished by the authority of successive congresses of the United States since that period. It is unnecessary to speak of the pre-eminent merit of this work, or of the distinguished character and ability of its author.

In Cushing's Law and Practice of Legislative Assemblies, a comprehensive work of great merit, the distinguished author, at paragraph 299, says: " The presiding officer, being freely elected by the members, by reason of the confidence

which they have in him, is removable by them, at their pleasure, in the same manner, whenever he becomes permanently unable, by reason of sickness or otherwise, to discharge the duties of his place, and does not resign his office; or whenever he has, in any manner, or for any cause, forfeited or lost the confidence upon the strength of which he was elected."

In Hatsell's Precedents of Proceedings in the House of Commons, a very old and valuable treatise (volume 2, p. 230), it is said:

" The speaker, though he ought upon all occasions to be treated with the greatest respect and attention by the individual members of the house, is in fact, as was said on the 9th of March, 1620, but a servant to the house, and not their master; and it is therefore his first duty to obey implicitly the orders of the house, without attending to any other commands."

It is, however, contended on constitutional grounds that the house of representatives of this state does not have the power, by a vote or resolution of the house, to remove the speaker from office. It is clear that such power does exist according to common parliamentary law; and it is conceded that the constitution nowhere expressly forbids such removal; but it is claimed that, by virtue of certain constitutional provisions, the power of the house to thus remove the speaker from office is prohibited by implication.

One ground upon which this claim is based is that the speaker is a state officer, and can be removed from office only by impeachment. Const. art. 13, § 2. It is claimed that the speaker is a state officer because he is charged with the duty of receiving, opening and publishing the election returns for state officers in the presence of both houses of the general assembly (Const. art. 4, § 3); and that, in a certain contingency, the duties of governor may devolve upon him (Id. § 15).

These provisions, in our judgment, fall far short of establishing the proposition that a member of the house of rep-

resentatives, by virtue of his election to the office of speaker, becomes a state officer, or that he is thereby exempted from the power, discipline and control of the house as a member and officer thereof. It is true, the speaker of the house may, in a certain contingency, be required to discharge certain duties in connection with the administration of the state government; but he must at all times, so long as he is the speaker, be a member of the house of representatives. The house has no authority to elect a person, not a member, to the speakership. A member, by virtue of his election as speaker, does not lose his character or *status* as a member. On the contrary, he must retain his *status* as a member in order to hold the office of speaker. His rights and privileges as a member are in no way impaired by his election to the speakership, nor are his emoluments increased thereby. His speakership is dependent upon his membership.

Something has been claimed on account of the phraseology of section 10 of article 5 of the constitution, which provides: " The house of representatives shall elect one of its members as speaker. Each house shall choose its other officers." The use of the word " elect " in reference to the speaker, and the word " choose " in reference to the other officers, was, in our opinion, a mere matter of rhetoric. The national constitution (art. 1, § 2, ¶ 5) reads: " The house of representatives shall choose their speaker and other officers." But the words "its other officers," in the section of our state constitution above quoted, are quite significant; they show clearly that the speaker is classed as an officer of the house, rather than as a state officer.

There appears to be no substantial reason for concluding that the duty of receiving, opening and publishing the election returns for officers of the executive department before both houses of the general assembly was devolved upon the speaker on the ground that he was a state officer; nor do we see how the devolving of such duty upon the speaker in any way tends to make him a state officer any more

than it makes state officers of all the members of the general assembly who are required to participate in the canvass of such returns. It seems far more probable that the lieutenant-governor is exempted from such duty because he is a state officer.

The duties of governor cannot be devolved upon the speaker of the house of representatives except in the contingency that the governor, the lieutenant-governor and the president of the senate are incapacitated from discharging the same. There is little force in the argument that the speaker becomes a state officer in advance of the happening of such remote contingency. Such contingency can scarcely occur when the general assembly is in session; for though the offices of governor and lieutenant-governor may become vacant during a legislative session, nevertheless the senate is specially required to have a president *pro tempore* to preside over its deliberations (Const. art. 5, § 10), and the president of the senate precedes the speaker in the contingent gubernatorial succession (Id. art. 4, §§ 14, 15).

No reason appears why any of the special duties devolved upon the speaker by the constitution may not as well be performed by any member holding the office of speaker at the time when the contingency occurs requiring their performance, as by the one chosen to such office at the beginning of the legislative session.

Again, the speaker does not derive his office from the suffrages of the electors throughout the state; nor is he chosen for any specified term, as is the case with the officers of the executive department, with whom it is sought to classify him as a state officer. Indeed, the mode of electing the speaker is not in any manner provided for by the constitution. The provision is simply, " The house of representatives shall elect one of its members as speaker; " leaving the manner of his election and the tenure of his office to the will of the body from which he derives his office, according to common parliamentary law.

To our minds it is clear that the speaker of the house of

representatives, whose duties are mainly legislative, is not to be considered a state officer merely on the ground that in a remote contingency the duties of a state officer may be devolved upon him; nor is he so to be considered upon the ground that his office is designated by the constitution, for so is the office of senator and member of the house of representatives.

It may be said that all legislative officers are constitutional officers; but that does not make them state officers and liable to impeachment. Article 13, section 2, of the constitution, declares that "the governor and other state and judicial officers, except county judges and justices of the peace, shall be liable to impeachment." The language of the constitution of the United States is, "the president and vice-president and all civil officers of the United States shall be removed from office on impeachment." Art. 2, § 4. Under this provision it was decided in the senate of the United States, in *Blount's Case*, nearly a hundred years ago, that senators are not civil officers, within the meaning of the constitution, and hence not subject to impeachment. Mechem, Pub. Off. § 471, note 1.

In *State v. Gilmore*, 20 Kan. 551, Mr. Justice Brewer, delivering the opinion of the court, referred with approval to the decision in *Blount's Case*, and declined to say that a member of the house of representatives of Kansas was liable to impeachment even under a constitution which declares that "the governor and all other officers under the constitution shall be subject to impeachment." In that case, also, the court held that an action brought in the district court to remove a member of the house from office could not be maintained under a statute providing for the removal of "any state, district, city, county or township officer for whose removal from office by impeachment there is no provision." The decision was placed, not upon the ground that the member was subject to removal by impeachment only, but upon the ground that the exclusive power of removal is vested in the house itself, under the constitutional

provision that "each house shall be judge of the elections, returns and qualifications of its own members." Construing this provision, the learned judge said:

"This is a grant of power, and constitutes each house the ultimate tribunal of the qualifications of its own members. The two houses, acting conjointly, do not decide. Each house acts for itself, and by itself; and from its decision there is no appeal, not even to the two houses. And this power is not exhausted when once it has been exercised, and a member admitted to his seat. It is a continuous power, and runs through the entire term. At any time, and at all times during the term of office, each house is empowered to pass upon the present qualifications of its own members."

The constitution of Colorado not only provides that "each house shall judge of the election and qualification of its members" (art. 5, § 10), but section 12 of the same article further provides: "Each house shall have power to determine the rules of its proceedings, and punish its members or other persons for contempt or disorderly behavior in its presence; to enforce obedience to its process; to protect its members against violence, or offers of bribes or private solicitation; and, with the concurrence of two-thirds, to expel a member, but not a second time for the same cause; and shall have all other powers necessary for the legislature of a free state."

This grant of power is plenary, and, except as otherwise provided in the constitution itself, is exclusive, and, when exercised within legitimate limits, is conclusive upon every department of the government. The power is granted to the house, not to the officers of the house, and is to be exercised by a majority of the members. The exclusive nature of this power is in no way affected by the fact that the other departments of the government, the executive and judicial, are equally free and independent within their respective spheres of jurisdiction; nor by the further fact that the contingency may arise which will cast upon the

executive or the judicial branch of the government the responsibility of determining which of two conflicting organizations of the legislative body is the legal one; for there can be but one such legitimate body. *Prince v. Skillin, supra.* See, also, *Opinion of the Justices,* 56 N. H. 570.

In the case of *Hiss v. Bartlett,* 3 Gray, 468, decided in 1855, Chief Justice Shaw, delivering the opinion of the court, declared that the power was inherent in the house of representatives of Massachusetts to expel a member for misconduct, though there was no provision in the constitution relating to expulsion of members. The court based its decision upon the general principles of parliamentary law, that it is necessary that every legislative body shall have the power to protect itself against unworthy members, as well as upon a clause of the constitution providing that "the house of representatives shall be judge of the returns, elections and qualifications of its own members." The following extract from the opinion illustrates the reasoning of the court:

"The power of expulsion is a necessary and incidental power, to enable the house to perform its high functions, and is necessary to the safety of the state. It is a power of protection." Again, the same opinion declares that such power "must exist in every aggregate and deliberative body, in order to the exercise of its functions, and because without it such body would be powerless to accomplish the purposes of its constitution; and therefore any attempt to express or define it would impair, rather than strengthen, it."

The Hiss-Bartlett decision is also authority for the doctrine that the court will not inquire into the motive or cause which influenced the action of the legislative body in such cases, and that the court will not in any way interfere with the procedure or mode of trial by which the legislature reaches its conclusions in expelling a member. The house must judge for itself in such matters, and its jurisdiction to so judge and decide is exclusive. As to those

matters confided exclusively to each legislative branch of the government, if a wrong or unwise course be pursued, there is no appeal under our system of government except to the ballot-box.

Since the house of representatives is thus invested, for its own protection, with inherent power in the matter of disciplining its members, since it may deprive a member of his office as representative, an office to which he has been chosen by the electors of his district for a specified term, and thus deprive him of his emoluments, *a fortiori* may the house remove the speaker from an office given to him by the house itself, not for any definite term, and to which no emoluments are attached,— an office, too, as we have seen, which he is to hold, and the duties of which he is to exercise, at the will and pleasure of the house, according to immemorial usage. It is easy to conceive how the power to remove the speaker by the majority of the house may become necessary in order that legislation may be proceeded with in accordance with the will of such majority.

Another ground upon which it is contended that the speaker cannot be removed by vote or resolution of the house is that, if the speaker be not such an officer as is liable to removal from office by impeachment, then he must be included among those officers mentioned in section 3 of article 13 of the constitution, which provides that "all officers not liable to impeachment shall be subject to removal for misconduct or malfeasance in office, in such manner as may be provided by law;" and it is contended that the words "may be provided by law" should be construed to mean statutory law only. If we adopt this construction, then the speaker, not being liable to impeachment, and no statute having been adopted providing for his removal, cannot be removed at all. It is obvious that the words "may be provided by law" must be held to include something more than statutory law, or else some limit must be placed upon the words "all other officers," as used in section 3; for, as we have seen, the house is authorized to choose its

other officers as well as the speaker; and it certainly cannot be maintained that the subordinate officers of the house, having once been chosen, and not being liable to impeachment, cannot be removed, however unworthy or unfit they may be, simply because no statute has been provided for their removal.

Again, clerks of the supreme and district courts are officers designated by the constitution; and it is provided that they shall be appointed by the judges of their respective courts, to hold their offices during the pleasure of such judges. Art. 6, §§ 9, 19. They certainly are not state officers, and the manner of their removal is not provided by statutory law. Is there, then, no power to remove them? Unquestionably the answer must be that, since they derive their offices by appointment from the judges, to hold during the pleasure of the judges, they may be removed by the judges. The same principle is applicable to the speaker. He derives his office by election from the house to hold at the pleasure of the house; hence he may be removed by the house. The only difference is that the pleasure of the judges, the tenure by which the clerk holds, is expressed in the constitution; while the pleasure of the house, the tenure by which the speaker holds, exists and has existed from time immemorial as a part of our common parliamentary law, unrepealed and unaffected by the constitution or any statutory enactment.

Considering the nature of the office of speaker, the manner of his election and the plenary powers granted by the constitution to each house of the general assembly, there may be some doubt whether the framers of the constitution intended to provide for the removal of the speaker in any other manner than by common parliamentary law, subject to such rules as the house of representatives, as a co-ordinate branch of "the legislature of a free state," might see fit to adopt for the control of its own organization and proceedings. Section 3 of article 13 may have been intended to include only such officers — county, precinct and the

like — as are elected or appointed for a definite or specified term, and for whose removal some special provision was necessary, rather than to such officers as are chosen by the senate or house of representatives to hold at the will and pleasure of those bodies, and for their convenience in the discharge of their primary duties as legislative bodies. But conceding that the speaker is included in said section 3, nevertheless, the common parliamentary law, as it existed in this country at the time of the adoption of our constitution, provided that the speaker might be removed at the will and pleasure of the house; and such law, not having been repealed or superseded by any constitutional or statutory enactment, still exists as an adequate provision for the removal of the speaker in conformity to said section.

It is plausibly urged, against the power of the house to remove its speaker by vote or resolution, that, during the hundred years of representative government in this country under written constitutions, not a single instance has occurred where the speaker of the national house or the speaker of any state legislature has been removed. This may be true as a matter of fact, or it may be that such removals have been made, and that the lack of judicial precedent or historical account regarding them is to be attributed to the fact that the authority to make them has never before been questioned; certainly, as a matter of law, during all this time these legislative bodies have possessed the power thus to remove such officers, except in jurisdictions where the common parliamentary law may have been repealed or modified. No precedent to the contrary has been brought to our attention; but the law, as stated in plain, unequivocal language by Jefferson and Cushing, *supra*, seems to have been uniformly accepted as authoritative throughout the United States. If such power of removal has not been exercised, we must conclude that our various legislative assemblies have been singularly fortunate in choosing speakers faithful to voice the will and pleasure of

those bodies, or that the members thereof have been remarkably patient and forbearing with the action of their speakers. It is quite probable that our good fortune has been due in some measure to both causes; and this is much to the credit of our people, for patience, forbearance. and fidelity by those in official station are essential to wise and efficient administration in republican government.

Upon investigation and reflection, we are satisfied that, as a purely legal proposition, the house of representatives has the power, by the vote of "a majority of the whole number of members elected," to remove its speaker from office and to elect another in his stead, in the manner stated in the executive communication submitted. Any other conclusion would, in our opinion, be antagonistic to the fundamental principle of representative government, that the majority of each legislative body has the power to control the action of such body within the limits of its jurisdiction, except as otherwise provided by positive law. If a clear majority of the whole house cannot thus change their presiding officer, then it is difficult to see how two-thirds, three-fourths, or even the whole number, can take such action against the will of the speaker. We express no opinion as to the wisdom, expediency or policy of the course pursued by the majority. They must assume and bear the responsibility for the exercise of their powers.

MR. JUSTICE HAYT. I concur in the foregoing opinion of Mr. Justice ELLIOTT, except in so far as it maintains that the words " in such manner as provided by law," as used in connection with removals in section 3 of article 13 of the constitution, authorize a removal in any manner sanctioned by parliamentary law. If the speaker of the house is an " officer," within the meaning of this section, then something more than parliamentary precedent should, I think, be held necessary to authorize his removal. In my judgment, however, the speaker of the house of representatives

of this state is not included in the word "officers," as used in that section, and hence the power of removal can in no way be affected thereby.

As a general rule, where the term of office is not fixed, the power of removal accompanies the power of appointment as incidental thereto. The term of office of speaker with us is neither designated by the constitution nor fixed by any statute. He, therefore, holds only during the pleasure of the house that elected him; and the power of removal by that body, without restriction as to term or tenure, must, for this reason, be upheld.