## In Equity.

### LINWOOD S. DURGIN *vs.* JOHN J. CURRAN.

### Androscoggin.    Opinion May 26, 1910.

*Elections.    Ballots.    Marking Ballots.    Distinguishing Marks.    Voter's Intention.
    Statutes.    Construction.    Revised Statutes, chapter 1, section 6, para-
            graph 1; chapter 6, sections 29, 43, 70 to 75.*

In a city election, the aldermen can act only on the ward returns, having no
power to recount the ballots, and hence their determination based on a
recount is without effect.

A ballot is not vitiated by a ward clerk placing a distinguishing mark on it
at the time of the count.

Nothing appearing to the contrary, a distinguishing mark on a ballot will be
presumed to have been made by the voter.

Any other mark than a single X which the statute prescribes for marking a
ballot is a distinguishing mark, which invalidates the ballot.

A ballot is vitiated by the voter placing two X's in the square over a party
name.

Where the name of one of the candidates for mayor was written on a ballot
under the name of the other candidate which was not erased, *held* that it
did not affect the ballot as to the other officers voted for.

A ballot is vitiated by placing an X in the square over a party name and an
X after the name of one or more individual candidates.

Writing the name of a candidate above a name erased, instead of under it
as required by statute, invalidates the ballot as to that particular office.

Where the names of three candidates for councilman were printed in one
column, even if it was improper, on erasing the middle name, to write
another name in a blank space below the third name, yet the ballot was
not invalidated as to the vote for alderman.

Where a sticker for one candidate for mayor was placed above the name of
the other in the party group voted for without erasing the name of the
latter, *held* that it did not vitiate the ballot as to the other officers voted
for.

Where the names of three candidates for councilman were printed in a
column and the last name was erased, the fact that another name was
written after it, instead of under it, as required by law, did not affect the
ballot as to the vote for alderman.

Inserting a name on a ballot where another name is erased, instead of insert-
ing it below, as required by statute, invalidates that vote.

A distinct pencil mark on a ballot in addition to an X is a distinguishing mark, which invalidates the ballot, though it was made carelessly and was unnoticed by the voter.

Where a voter made something resembling a figure 4 in the square above the party name and then made an X over or upon it, *held* that it was a distinguishing mark which invalidated the ballot.

In passing on the validity of a ballot not marked according to law, a court cannot consider the voter's intention as manifested by the marking.

Under Revised Statutes, chapter 1, section 6, paragraph 1, when a court finds a statute clear in its terms and unambiguous in its meaning, it must give it the construction conveyed by the common meaning of the language.

Revised Statutes, chapter 6, section 43, prohibiting the rejection of a ballot on account of a distinguishing mark, after it has been received into the ballot box, was repealed by necessary implication, since, if given effect, it would abrogate the entire policy and purpose of the Australian ballot system.

In equity. On appeal by defendant. Decree below sustained.

Proceedings by the plaintiff, "as in equity," under the provisions of Revised Statutes, chapter 6, sections 70 to 75, to determine his right to the office of alderman from Ward 2, in the City of Lewiston. The matter was heard by the Justice of the first instance who found and decreed that the plaintiff was entitled by law to the said office of alderman and thereupon and in accordance with the provisions of section 72 of the aforesaid chapter, the defendant appealed and the matter was brought before the Justices of the Supreme Judicial Court as provided in said section 72.

The case is stated in the opinion.

*George S. McCarty*, for plaintiff.

*William H. Hines*, and *John J. Curran*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SPEAR, CORNISH, KING, JJ.

SPEAR, J. This case is properly before the Justices on appeal under the provisions of R. S., ch. 6, sec. 72. The sitting Justice made the following decision from which the appeal before us was taken.

"This case, after due notice had been ordered and served, came on for hearing April 1, 1910. The defendant appeared personally and by his attorney, William H. Hines, Esq.

The petitioner brings this proceeding under the provisions of sections 70 to 75 of chapter 6 of the Revised Statutes to determine his right to the office of Alderman from Ward Two, in the City of Lewiston, for the current year. He contends that at the municipal election held at Lewiston, on the first Monday in March, 1910, he was a lawful candidate for the office of Alderman, in Ward Two, and receiving a plurality of all the votes cast for that office at that election in said Ward; and that he was thereby elected to said office, and should have been so declared, but that the defendant, who was also a candidate for said office, was, contrary to the fact, declared elected to said office, that a certificate of election was issued to him, and that the defendant, having been duly qualified according to law, is now in the exercise and enjoyment of said office. On the other hand the defendant contends that he himself received a plurality of all the votes cast at that election for alderman, that he was accordingly elected, and that he is now in the lawful possession of said office. This is the only issue.

At the close of the Ward meeting the warden made the official declaration that the petitioner had received 227 votes, and that the defendant had received 229 votes, and was accordingly elected. The ward returns filed with the City Clerk showed the same figures and the same result. The petitioner denies the correctness of this declaration and return. He introduced testimony to the effect that when the votes were counted at the close of the meeting, it was found that 208 "straight" ballots had been cast for the party group containing the defendant's name, and 219 "straight" ballots for the group containing the petitioner's name, and that the defendant had received in "split" ballots 14 votes additional, and the petitioner in like manner had received eight additional votes, making in all 222 votes for the defendant and 227 for the petitioner, a total of 449 votes; That notwithstanding the result of the count, the warden declared the vote as above stated, 227 for the petitioner, and 229 for the defendant; that the error was occasioned by adding the defendant's 14 votes on "split" ballots to 215 instead of 208; that that 215 was the total vote received by the candidate for Mayor whose name was in the defendant's column, that the 215 made up

of 208 "straight" ballots and seven additional votes which that mayoralty candidate received on "split" ballots, so that adding fourteen "split" votes to 215, which itself was made up of 208 "straight" and 7 "split" votes, gave the defendant the benefit of 21 "split" votes, whereas in fact he had only 14; in other words, that 7 "split" votes were reckoned for the defendant, twice.

This evidence was not in any way contradicted at the hearing, except inferentially by the ballots now in the ballot box, of which I shall speak later. The petitioner's claim that there was an error in stating and returning the vote for alderman, finds some corroboration in the returns made of the votes for other officers on the same ballots, and of the defective ballots, the latter being returned as 14 in number.

The returns show that the vote for mayor was       215
                                                  234
                    (add defective)      14 total, 463
        for councilmen (3)              1349
        average for each                449
                    (add defective)      14 total, 463
        for school committee            218
                                         231
                    (add defective)      14 total, 463
        for warden                      220
                                         231
                    (add defective)      14 total, 465
        for ward clerk                  220
                                         231
                    (add defective)      14 total, 465
        for alderman                    229
                                         227
                                         14 total, 470
The aldermanic count as testified to for the
                    petitioner was      222
                                        227
                    (add defective       14 total, 463

Upon the face of these returns it would seem that there was an error either in the return of the aldermanic vote, or in all the others. But while these returns are suggestive on the point in controversy, I do not regard them as conclusive, because it may have happened that more voters voted for aldermanic candidates than for others, or that fewer voters erased the names of aldermanic candidates, than they did the names of others.

In defense, the defendant, against objection, introduced the evidence of the recount of ballots by the aldermen of the city who were in office at the time of the election in question, and of the action of the aldermen thereon. But aldermen have no authority to recount ballots. They can act only on the ward returns. And inasmuch as these aldermen had no lawful authority to recount the ballots, their determination, based upon their count, had no validity or effect whatever. Their count is admissible in any event only to show the state of the ballots in the box at the time they counted them, so far as that is of any importance.

At the hearing the defendant introduced the ward 2 ballot box, and the ballots in it were counted in my presence. The total number was 469, approximating the number stated in the ward return for alderman, inclusive of defective votes. At the conclusion of the count the parties agreed that upon undisputed ballots the petitioner received

                              223 votes and the defendant

                              222 votes. The parties also agreed that two ballots were to be disregarded, the names of the candidates for alderman, one on each side, having been erased.

The remaining 22 ballots were reserved for my consideration, and were marked Plff's Exhibits 3 to 24 inclusive. Subsequently the parties agreed that numbers 5, 6, 8, 9, 10, 11, 12 and 13 were defective, and not to be counted. Upon the remaining 14, I rule as follows:

No. 3. The undisputed evidence showed that the ward clerk at the time of the count on election day made a X in one of the squares over a party name. Of course nothing that the ward clerk did under such circumstances could invalidate the ballot. But the

ballot showed two X's in the square over the other party name. Nothing appearing to the contrary, it must be presumed that the voter put them there. The statute provides that the voter shall indicate his vote by making a X in one of the squares. He can make one X and no more. He can make a X but no other mark. If he does more than the statute permits, as by making two X's, his ballot is defective and cannot be counted. Any mark other than the single X which the statute prescribes becomes a distinguishing mark, and distinguishing marks necessarily invalidate ballots. See *Curran* v. *Clayton*, 86 Maine, 42. This ballot is claimed for the petitioner. It is defective. I do not count it.

No. 4. This ballot is claimed to be defective because the name of one of the candidates for mayor was written under the name of the other, the latter name not being erased. I think this condition does not effect the ballot as to the other officers voted for. I count No. 4 for the petitioner.

No. 7. This ballot contains an X in the square over the party name, also an X after the name of each candidate in that party group. These are distinguishing marks. The ballot is defective. I do not count it.

No. 14. On this ballot the name of the petitioner is erased by a line drawn through it, and the name of the defendant (as "John J. Curran") is written above it. This is contrary to the statute provision, which is that the new name shall be written under the names erased. This invalidates the ballot, so far as these parties are concerned. I do not count it.

No. 15. On this ballot there is a X in the square above the party name; also a X opposite the name of the aldermanic candidate voted for. This is a distinguishing mark and renders the entire ballot defective, and I do not count it.

No. 16. On this ballot the name of the three councilmen in one group were printed in this order:

Samuel Stewart
Chas. G. Kernan. The name
Paul Kramer

of Kernan was erased by a line drawn through it, and another name was written in the blank spaces below the name of Kramer.

I think that was the proper place to write it, and that in any event it does not affect the vote for alderman. I count this vote for the petitioner.

No. 17. This ballot is similar to No. 16, and I count it for the petitioner for the same reasons as are given under No. 16.

No. 18. On this ballot there is a X in the square above a party name. The voter also placed a X after the name of the candidate for warden, in the other group of names. This is a distinguishing mark. The ballot is defective and I do not count it.

No. 19. This ballot is similar to No. 4, differing only in the fact that a sticker for one candidate for mayor is placed above the name of the other in the party group voted for. For reasons given under number 4, I count No. 19 for the defendant.

No. 20. This ballot is very much like No. 16, except that the voter erased the last name of the councilman candidates, and wrote another name after it, instead of under it. I count this vote for the defendant.

No. 21. On this ballot the name of one of the candidates for alderman was completely erased by scratching, and the name of the other was written, not below, but upon the space where the erased name had been. This is contrary to the statutory provision, and invalidates the ballot for alderman. I have not considered the position taken at the hearing, that it was invalid for another reason. I do not count this ballot.

No. 22. This ballot is precisely like No. 21, and for reasons already given, I do not count it.

No. 23. On this ballot the X in the square presents a peculiar appearance. It seems to have been made by a nervous, and perhaps an aged hand. Besides a X it contains another distinct pencil mark, and from its appearance, I think that this latter mark was made carelessly, and that perhaps the voter did not notice it. Nevertheless under the rules of law, I am not able to find any sufficient ground for distinguishing between this one and other distinguishing marks. I do not count this vote.

No. 24. On this ballot, the voter appears first to have made a figure 4, or something that looks like 4, in the blank space, and

then to have made a X over or upon it.    I think it is clear that this must be held to be a distinguishing mark, and that the ballot is defective.    I do not count it.

Counting all the ballots in the box which I think can be counted for either of the parties, I find that the petitioner received 226 votes, and that the defendant received 224 votes.    And upon all the evidence I find and adjudge that the petitioner received a plurality of all the votes cast for alderman in Ward Two, for the municipal year 1910-1911, and that he is entitled by law to the said office. I award judgment to the petitioner for his costs.

We think the decree of the sitting Justice must be sustained.

It is contended, however, that the intention of the voter, as manifested by the marking of his ballot, should be considered.    But, whatever the intention, or lack of intention, of the voter, in marking his ballot at variance with the requirements of the statute, is a matter which may, if thought proper, be addressed to the attention of the legislature, but cannot be considered in the deliberations of the court.    When the court finds a statute, clear in its terms and unambiguous in its meaning, it must rest content in giving such statute the construction conveyed by the "common meaning of the language."    R. S., chapter 1, section 6, par. 1.    The rule of intention, therefore, which characterized the interpretation of the old statute cannot prevail under the present system.

The very purpose and spirit of the Australian system, are secrecy with respect to the ballot cast, and immunity to the voter from danger of detection as to how he marked his ballot.    Section 29 of chapter 6 makes it a penal offense for a voter to expose his intention as to "how he is about to vote," or for any person to "endeavor" to induce the voter to show how he marks or has marked his ballot. *Curran* v. *Clayton*, 86 Maine, 42, fully covers the various contentions in the case at bar.    The court is of the opinion that the conclusion of the sitting Justice as to the method of counting the disputed ballots was correct, and his determination that the petitioner received a plurality of the legal votes cast and was entitled to the office of alderman, so claimed in his bill, must be sustained.

R. S., chapter 6, section 43, has not been overlooked. But it is so evident, if given effect, that it not only abrogates the entire policy and purpose of the Australian ballot, but opens the door to placing distinguishing marks upon ballots not possible under the old statute, that its retention in the statute was not the legislative intent and must be regarded as repealed by necessary implication.

> *Decree sustained with costs.*
>
> *Certified to the clerk of courts for a judgment in accordance with this opinion.*