ARTHUR J. LESIEUR

*vs.*

LOUIS B. LAUSIER

York.   Opinion, April 17, 1953.

*N. B. and T. B. Walker,*
*Gendron & McDougal,*
*Waterhouse, Spencer & Carroll,*
*Crowley & Nason,* for plaintiff.

*Lausier & Donahue,*
*Simon Spill,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, NULTY, WILLIAMSON, TIRRELL, JJ. (THAXTER, J., dissents.)

WILLIAMSON, J. On appeal. This is a petition under the "contested election" statute to determine whether the petitioner Arthur Lesieur was elected mayor of Biddeford for the current term commencing January 1, 1953 and is entitled to the office. *R. S., Chap. 5, Secs. 85-89 inclusive.*

The petitioner and the respondent were the only candidates for mayor at the election of December 15, 1952. On the basis of the official returns showing 3985 votes for the respondent and 3945 votes for the petitioner, the respondent was declared elected. On December 19th the petitioner commenced the present proceeding alleging in substance that if absentee ballots illegally cast, and ballots defective, invalid and void on their face should be set aside, the petitioner would be found to have a majority of the votes legally cast and thus entitled to the office of mayor. The respondent took the oath of office on January first and has since then been in possession of and has conducted the office of mayor.

The Justice of the Superior Court before whom the matter was returnable found that the petitioner received 3986 votes and the respondent 3846 votes. In a judgment rendered on February second the justice said, in part:

"Upon these findings of law and fact, as a whole it is my judgment that the petitioner has received a majority of the legal votes cast for the office of Mayor in the Biddeford municipal election of December 15, 1952, for the term beginning January 1, 1953, and, for that reason, I hereby declare him to have been duly and legally elected to said office, and to be entitled thereto for the term stated.
"The fact that the petitioner is Judge of the Municipal Court does not, in my opinion, disqualify him as a candidate for Mayor. If and when he

assumes the latter office, he will vacate the former under the holding in Howard vs. Harrington, 114 Me. 443, 96 A. 769."

The respondent duly entered an appeal "which appeal shall briefly set forth the reasons therefor" (Sec. 87)—in this instance thirty-five in number. It may be noted that the appeal is not to the Law Court but to the Justices of the Supreme Judicial Court who "shall immediately consider the cause and decide thereon and transmit their decision to the clerk of courts in the county where the suit is pending . . ." (Sec. 87) On appeal the case is considered *de novo*.

The statutory proceeding is designed to combine the ouster from office of quo warranto with the introduction into office of mandamus. Informative cases on the history and scope of the statute and the proper procedure to be followed are *Prince* v. *Skillin,* 71 Me. 361; *Bartlett* v. *McIntire,* 108 Me. 161, 79 A. 525; *Tremblay* v. *Murphy,* 111 Me. 38, 88 A. 55; *Howard* v. *Harrington,* 114 Me. 443, 96 A. 769, L. R. A. 1917 A. 211.

In our view we need consider only the fifth reason of appeal, reading as follows:

"5. Because the Petitioner, Arthur J. Lesieur, is not entitled by law to the office of Mayor of the City of Biddeford, as claimed by him for that since the first day of January, 1953, and prior thereto, he has been the legally appointed and qualified Judge of the Municipal Court of the City of Biddeford which office is incompatible with that of Mayor of the City of Biddeford, and since the fifteenth day of December, A. D. 1952, the date of election, and the first day of January, A. D. 1953, the date the Mayor assumes office in the City of Biddeford, and since February 2, 1953, the date of judgment of the Justice of the Superior Court, he has performed and continued to perform the duties of said office whereby he has waived, surrendered,

abandoned, terminated and vacated his rights, if any, to the said office of Mayor, the term of which began January 1, 1953, and has thereby disqualified himself."

The petitioner in challenging the conclusions of the fifth reason does not question the facts. Indeed we take judicial notice that the petitioner has held and exercised the office of judge of the Biddeford Municipal Court as there stated.

The decisive question is: Did the petitioner vacate or surrender his claim to the office of mayor by continuing in and exercising the office of judge of the Municipal Court after the time fixed by law for the assumption of the duties of the office of mayor by one elected to said office? The controlling date in this respect is January 1, 1953. *Sections 16 and 17 of the city Charter of Biddeford; P. & S. L., 1941, Chap. 84, Sections 9 and 10.* If the answer is in the affirmative, then the petitioner has no standing under the statute cited above to contest the election of the respondent. The petitioner may have judgment in his favor only if he "is entitled by law to the office claimed by him . . ." (Sec. 86) If the claimant is disqualified, clearly he has no right to proceed under the statute.

There are certain basic principles with respect to incompatible offices which we need no more than mention.

First: The offices of mayor and judge of the municipal court are incompatible. They cannot be held by one person. *Howard* v. *Harrington, supra.*

Second: The acceptance of a second office vacates the first office, whether or not the person becomes the lawful incumbent of the second office. This is the rule when the offices are under one government. We are not concerned with distinctions arising, for example, when the first is a federal office and the second a state office. *Stubbs* v. *Lee,* 64

Me. 195, 18 Am. Rep. 251 (state offices) ; *Bunting* v. *Willis*, 27 Gratt. (Va.) 144, 21 Am. Rep. 338 (federal and state offices) ; 42 Am. Jur. 940, Public Officers, Sec. 77 et seq; 67 C. J. S. 133, Officers, Sec. 23. To put the rule in terms of the present case, the *respondent*, the declared winner, by qualifying as mayor on January first vacated any state office or claim to state office he may have held incompatible with the office of mayor. This result followed whether or not it should appear that he was legally elected. *Shell* v. *Cousins*, 77 Va. 328; *Rex* v. *Hughes*, 5 Barn. & C. 886, 108 Eng. Reprint, 329, 8 Dowl. & R. 708; also annotations in 100 A. L. R. 1168, and in 14 Am. and Eng. Anno. Cases 628. Although the title to the second office may be invalid nevertheless its acceptance vacates the first office.

In *Howard* v. *Harrington, supra,* with Chief Justice Savage speaking for the court, the principle that acceptance of the second office vacates the first office is carried a step further. There, as here, the petitioner was a candidate for the office of mayor to which the respondent was declared elected. While the case, brought under the "contested election" statute, was pending and during the term of office to which Howard claimed to have been elected, he accepted the office of judge of the police court.

After a careful review of the authorities the court concluded that the office of mayor and of judge of the police court were incompatible, and the court said on page 449 :

> "Thence it is that two such offices must be held to be incompatible. And we are all of opinion that when one who has the office of mayor of Rockland, or one who has the right of office, accepts the incompatible office of Judge of the police court, he thereby abandons, surrenders and vacates ipso facto, such election, or right of election, as he had to the office of mayor.

"Since the petitioner has vacated and surrendered his right to the office of mayor, we think that he cannot maintain this petition. The ultimate purpose of the petition is to oust the respondent, by showing that the petitioner is entitled to the office. And it is only when a petitioner 'is entitled by law to the office claimed by him,' R. S., ch. 6, sect. 71, that the Justice hearing the case may issue an order to the party unlawfully claiming or holding said office, commanding him to yield up said office to the officer who has been adjudged to be lawfully entitled thereto. Sect. 73. The petitioner has now no interest in the proceeding."

In the *Howard* case the petitioner, while claiming the present right to be mayor, *accepted the incompatible office of judge.* Here the petitioner, while claiming the present right to be mayor, has *continued to exercise the incompatible office of judge.* The court in the *Howard* case treated the claim of right to the office as the equivalent of the office itself. Had Howard been the mayor, then of course acceptance of the office of judge would have vacated or forfeited the office of mayor. From this starting point the court concluded that by taking the office of judge he vacated or surrendered his *claim of present right to the office* of mayor. The underlying principle to be derived from the court's reasoning is that eligibility with reference to compatibility of office is determined as of the time of the commencement of the term of office. The phrase "commencement of the term of office" where used in this opinion refers to the time fixed by law for assumption of the duties of the office. In the instant case the time is established at the first day on which the mayor-elect is entitled to hold the office. It is not necessary, however, that the time be so firmly fixed. For example, public officers appointed by the governor and council must qualify within thirty days after being commissioned. *R. S., Chap. 11, Sec. 8.* "A Member-elect (of the National House of Representatives) may defer until the meeting of the Con-

gress his choice between the seat and an incompatible office." 1 *Hinds' Precedents of the House of Representatives (1907)*, *page 601, par. 492.*

The principle is applicable with full force in the instant case. We hold that retention of the first office beyond the commencement of the term of the second office is a declination or forfeiture of the second office. Let us suppose that there had been no contest and that the petitioner had been declared elected but failed to qualify for the office. Would it not necessarily follow that his continuance in an incompatible office pointed directly and conclusively to the forfeiture or declination of any claim of title to the mayoralty?

The petitioner is a contestant under the statute seeking to gain the office from a declared winner. Obviously there was no obligation on his part pending the determination of the contest to take the oath of office or to attempt to take possession of the office of mayor on January first. He had commenced a contest and only if successful, and if he then so chose, would he qualify.

The position of the declared winner and the contestant, however, are precisely alike in this respect, namely, that each claims that he was the lawfully elected mayor for the stated term. The respondent has the benefit of possession of the office on the basis of the election returns, but the validity of the election was not thereby determined.

We have seen that when the second office of incompatible offices is accepted, the first office is thereby vacated. It does not follow, however, that the second office cannot be declined or that claim of title thereto may not be forfeited or abandoned. The acceptance of the second office, when the time comes to assume its duties, is a fact—a widely known fact. The judge has become the mayor and ceased to be the judge. Under like reasoning the continuance of the judge

in office is a fact. The judge has chosen to remain the judge and no longer claims title to the office of mayor. In either case the decisive facts are matters of public notice.

This reasoning is forcefully stated in a Report of the Committee of Elections to the House of Representatives in the case of General Blair, reading in part:

"But this record raises another question which, so far as the committee can learn, has not before arisen, and which it becomes necessary to examine. Mr. Blair was appointed a brigadier general August 7, 1862, and a major general, November 29, 1862, the duties of which latter office he discharged till January 1, 1864, when he tendered his resignation, which was accepted January 12, 1864. On this latter day he was qualified, and took his seat in the House of Representatives. The first regular session of the 38th Congress, fixed by law, commenced on the first Monday of December, 1863. It therefore appears that Mr. Blair held and discharged the duties of the office of major general for more than a month after the commencement of the session fixed by law of the Congress in which, after resigning that office, he subsequently took his seat. Now, if the reasoning already submitted, and the conclusions which the committee have drawn therefrom, be correct, viz., that the acceptance of an office incompatible with one already held must be deemed and treated as the resignation of the former, then does it not follow that the continuance in the discharge of the duties of the former office, after the time at which the law requires the entering upon and discharge of the incompatible duties of the latter, must be deemed and treated as a declination of this latter office? If two offices are tendered at the same time to the same person, and he is at liberty to choose between the two, but either the nature of the offices, or the requirements of the law or Constitution, forbid the acceptance of both, no one will doubt but that, after an election between them is made and the

duties of one have been entered upon, it is too late then to take the other. As both cannot be taken, the one is declined in the acceptance of the other. Does the fact that these two offices are tendered at the same time, make any difference in the principle? A man in the discharge of the duties of one office is tendered another, whose duties he is required to enter upon at a certain time, but the functions of both he cannot perform. When the time arrives at which the duties of the latter office commence, he is at liberty to choose. If he takes the latter, the functions of the former, *ipso facto,* cease as the result of his choice. If he determines to continue to hold the former, does he not of necessity decline the latter, as a like result of that choice? When he accepts one office, the law interprets the act as a surrender of any incompatible office. Shall it not put a like interpretation upon a continuance to discharge the duties of the other? If he may be permitted to keep vacant the one office one month by continuing in the incompatible one during that time, he may two or twelve months, or during its whole term. If these *acts* are not to be taken as an election on his part; then that election is yet to be made; and what interposes to require it to be made till the day before the term expires, or then? And thus may the people of any district, or any number of districts, be deprived altogether of representation. The committee can not arrive at any conclusion fraught with such results, but are of opinion that, when the time arrives at which the duties of two incompatible offices are by law to be discharged, a man at liberty to choose between the two, as effectually declines one not entered upon, by continuing in the one already held, as he would vacate the former if he did enter upon the latter.

"It therefore follows that Mr. Blair, by voluntarily continuing to hold and discharge the duties of the office of major general till January, 1864, declined and disqualified himself for the office of representative, the duties of which, by law, com-

menced on the first Monday of the December preceding."

Reports of Committees of the House of Representatives, First Session, 38th Congress, 1863-64, volume 1, Report number 110; *McCrary on Elections* (Fourth Edition) Pages 258-260.

An interesting reference to the Blair case which we have found in a judicial opinion is in *United States* v. *Dietrich,* 126 Fed. 676, 682, where Judge Van DeVanter, later a Justice of the Supreme Court of the United States, without expressing an opinion on the question, said:

"It may be that to have continued in the office of governor beyond the next meeting of the Senate would have operated as a declination of the office of senator (the case of Gen. Blair of Missouri, Reports of Committees 1st Sess., 38th Cong., No. 100 (110) and that of Gov. Hill of New York, Cong. Rec., vol. 23, pt. 1, 52d Cong., 2d Sess., pp. 74, 180, seem to be opposing precedents on this question); but to have continued in the office of governor after election as a senator, but not beyond the next meeting of the Senate, would have been permissible under the law, and would not have affected defendant's right to accept the senatorship if the Senate should give its favorable judgment upon his election, credentials, and qualifications."

The reasoning of the Blair case is appealing and is in accord with the underlying fundamental principals on which *Howard* v. *Harrington, supra,* was decided.

Applying the principle of the *Howard* case, *supra,* namely, that the claim of title to office by a contestant is equivalent to the office for purposes of testing incompatibility and the right to proceed under the "contested election" statute, we find that the petitioner has declined and disqualified himself as clearly and completely as did General Blair.

The rule adopted does not strike with undue harshness upon the petitioner. It is true that he must surrender the office held to litigate a claim of title to the office sought. There is a risk involved, but it is a risk he is not compelled to take. Had the petitioner been declared the winner and taken office, he would have vacated the judgeship, and yet in a contest with the respondent he might also have lost the mayoralty. The risk of losing the judgeship without gaining the mayoralty cannot be avoided.

Under the "contested election" statute the proceeding may be commenced before or at any time during the term of the office at stake. There is no compulsion on the petitioner to start the contest within a given period. On the petitioner's theory the candidate defeated on the returns and occupying an incompatible office can continue to exercise such office and at the same time hold the threat of a contest over the incumbent long after the start of the term. The removal of this candidate from the role of contestant will not determine the validity of the incumbent's election, but it will make the latter's title to that extent more certain.

Indeed the compelling reason why action in the first office must operate as a surrender of claim of title to the second office is the need of the public to know with certainty who possesses the power and authority to act in public office. Chief Justice Appleton stated the principle in words often quoted:

> "Where one has two incompatible offices, both cannot be retained. The public has a right to know which is held and which is surrendered. It should not be left to chance, or to the uncertain and fluctuating whim of the office-holder to determine." *Stubbs* v. *Lee,* supra.

The rule that we herein announce, namely, that continuance in and exercise of the duties of an incompatible office after the time fixed by law for the assumption of the duties of a new office by one elected thereto vacates and surrenders a claim to the new office, is the logical and necessary extension of the rule in *Stubbs* v. *Lee, supra*. The rule is, to use words of Chief Justice Appleton, "certain and reliable as well as one indispensable for the protection of the public."

The petitioner having forfeited any claim to the office of mayor no longer has an interest in this proceeding. Accordingly we need neither consider nor determine whether in fact he was legally elected. When it appears that a petitioner could not serve if elected, the case ends.

*Appeal sustained.*

*Petition dismissed with costs.*

DISSENTING OPINION.

THAXTER, J. I fully agree with the majority opinion to the extent that it holds that the two offices of mayor of the City of Biddeford and judge of the Biddeford Municipal Court are incompatible and cannot both be held by the same person at the same time.

The question in this case, involving as it does the purity of the ballot and the right to public office, is a very sensitive one, and I dislike to have to differ with my associates on a matter of this kind.

The law on this point has been clearly expressed by this court. The ban against holding incompatible offices whether it be by the constitution, by statute, or by the common law, ordinarily is not directed against one who seeks two incompatible offices but against the exercise of the duties of those incompatible offices. Thus, unless it is expressly forbidden,

a person may run in an election for an office incompatible with one which he holds, or be appointed to such an office. *Howard* v. *Harrington,* 114 Me. 443. It is only when such person either expressly or by implication qualifies for the second that he is held to give up the first. *Stubbs* v. *Lee,* 64 Me. 195; 42 Am. Jur. 940. The principle is well stated by Justices Emery, Whitehouse and Peabody of our own court as follows:

> "II. The Constitution, Art. 4, Sec. 11, does not declare that the holder of an office of profit under the state shall not be elected to the legislature,— shall not be eligible to an election,—but simply declares that he shall not 'have a seat in either house during his continuing in such office.' Hence he need not resign his office before his election to the legislature. It is enough if he resigns it at the time of taking his seat in the legislature, and such resignation may only be by taking his oath or seat. The right of the electors to elect whom they will to any elective office is to be construed liberally, as abridged only by the express terms of the constitution or statute and not by mere implication. *Barker* v. *People,* 3 Cowen, 686. Thus, it has been judicially held that one who is an alien at the time of his election may yet take the office if he be naturalized after his election. . . . . ." *Opinion of The Justices,* 95 Me. 564, 586.

What does the majority say here? They concede that these general principles are good law, and that a person may be elected to an office incompatible with one he holds. He is all right until he qualifies or, in the opinion of the majority attempts to do so, for the new office. When however he seeks to enforce the right given him by his election, and to protect the rights of the people who elected him, he finds himself, in the opinion of the majority, unable to do so.

A person may do everything necessary to attain office, announce his candidacy, file primary nomination papers, con-

duct his campaign, tell the voters of his qualifications,—everything except to see that the votes are properly counted. When he takes the proceedings permitted by sections 85-90 of Chap. 5 of the Revised Statutes of 1944, protecting the integrity of elections, he is out of luck.

Such a doctrine does not to me make sense. The authorities cited to sustain it are not in point. This is particularly so in the case of General Blair. I have read the full record in this case with great care. He for more than a month voluntarily and deliberately failed to qualify for the office of representative to Congress from Missouri while he continued to serve as a major general in the Union army. How could we find a clearer intention than that to abandon the rights given to him by his election to Congress? Here there was no intention by Mr. Lesieur to abandon his rights to his election as mayor of the City of Biddeford at all. Quite the contrary. He asserted those rights forcefully from the first in the manner in which the statute permitted him to do so.

This court must do one of two things. Either we must repudiate the doctrine which has always been held in this state, which has been for a long time set forth by some of our greatest judges such as Chief Justices Appleton, Emery and Whitehouse, or we must hold that Mr. Lesieur did not, because of service as judge of the Municipal Court, abandon his claim to have been honestly elected to the office of mayor of the City of Biddeford. There is no alternative. The gist of the opinion in *Stubbs* v. *Lee, supra,* certainly substantiates this; and in all the Maine cases which hold that acceptance of one incompatible office is an abandonment of the other we must remember that there was a voluntary election between the two.

*Howard* v. *Harrington, supra,* cited in the majority opinion, is a particularly instructive case. After having been elected mayor of Rockland, Howard was appointed by

the governor judge of the police court of Rockland, an incompatible office with that of mayor, and was commissioned as such judge. By qualifying as judge the case holds correctly that he gave up his right to claim that he was elected mayor. How could he have more clearly shown that he waived his claim that he was elected mayor than by qualifying for his judgeship?

The majority seem to me to have been more concerned with the chronology of events than with what those events show to have been the intention of the parties.

By contesting his right to the office of mayor of the City of Biddeford, Mr. Lesieur would not thereby give up the office of judge of the Biddeford Municipal Court while the mayoralty contest was pending.

We must not forget the language of Chief Justice Appleton in *Stubbs* v. *Lee, supra,* at page 198, which states the general rule to be "that the acceptance of and qualification for an office incompatible with one then held is a resignation of the former." It is not just the "acceptance" of an office which vacates another incompatible one, but the "qualification" as well as the "acceptance" which does so.

What I am trying to say is simply this: "If the appellee, Mr. Lesieur, had the right to run in the election for the incompatible office of mayor of Biddeford, he had the right to see that the votes were properly and fairly counted in that election when he ran for that incompatible office."

I think that the appeal should be dismissed and that we should proceed in accordance with Sections 85-90 of Chap. 5 of the Revised Statutes to determine the result of the election. It is an onerous job to do so but I think such is our duty.

SIDNEY ST. F. THAXTER